Joyce W. Lindauer
State Bar No. 21555700
Kerry S. Alleyne
State Bar No. 24066090
Guy H. Holman
State Bar No. 24095171
Joyce W. Lindauer Attorney, PLLC
1412 Main St., Suite 500
Dallas, Texas 75202
Telephone: (972) 503-4033
Facsimile: (972) 503-4034
Attorneys for Alleged Debtors

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | **Chapter 7** |
| | § | |
| **WALL012 LLC, *et al.*[1],** | § | **Case No. 20-31136-hdh7** |
| | § | **(Jointly Administered)** |
| **Alleged Debtors.** | § | |

**RESPONSE AND OBJECTION TO AMENDED MOTION OF PETITIONING CREDITORS FOR (i) RECONSIDERATION OF ORDER DISMISSING INVOLUNTARY BANKRUPTCY CASES WITHOUT PREJUDICE; AND (ii) RELATED RELIEF**

**TO THE HONORABLE UNITED STATES BANKRUPTCY COURT:**

COME NOW WALL007 LLC, WALL009 LLC, WALL010 LLC, WALL011 LLC, WALL012 LLC, WALL016 LLC, and WALL017 LLC. ("Alleged Debtors"), Alleged Debtors in the above-styled and numbered bankruptcy case, and file their *Response and Objection to Amended Motion of Petitioning Creditors for (i) Reconsideration of Order Dismissing Involuntary Bankruptcy Cases without Prejudice; and (ii) Related Relief* [Docket No. 31] (the "Motion"), and in support thereof would respectfully show the Court:

[1] The Alleged Debtors in these cases are: WALL007 LLC, WALL009 LLC, WALL010 LLC, WALL011 LLC, WALL012 LLC, WALL016 LLC, and WALL017 LLC.

## I. PROCEDURAL AND FACTUAL BACKGROUND

1. On April 8, 2020, the Petitioners filed an involuntary petition initiating these bankruptcy proceedings pursuant to Chapter 7 of the Bankruptcy Code (11 U.S.C. §§ 101 *et seq*.).

2. On May 7, 2020, all Alleged Debtors filed their first *Motion to Dismiss Involuntary Petition*, citing, among other issues, the Petitioners' standing to file the instant case and/or cases. See Dkt No. 18.

3. On May 14, 2020, all Alleged Debtors filed their *Second Motion to Dismiss Involuntary Petition*, citing among other issues, the Petitioners' failure to comply with petition "wet signature" requirements that would authenticate and certify the identity of the Petitioners. See Dkt. No. 27.

4. On June 15, 2020, the Court conducted a hearing wherein the Second Motion was denied based on certain conditions being met and others offered to be corrected.

5. On August 17, 2020, the Court conducted a hearing wherein it considered arguments on several dispositive discovery issues before the Court. The Court issued an oral ruling on its findings on August 19, 2020 wherein it found the following:

- "The Petitioning Creditors did not really respond to Alleged Debtors' legality argument. Instead, the Petitioners claim that the difficulties associated with the COVID-19 crisis should excuse them from traveling to the United States for in-person depositions. During the hearing, counsel for the Petitioners did not specifically say there was a travel ban on Chinese nationals entering the United States. Rather, counsel argued that his clients would have to quarantine for 14 days upon entry to the United States and that doing so would be a great inconvenience."

- "The Court also believes that litigants who seek the benefit of the United States law must follow its process. And here, a serious concern has been raised that taking video depositions would violate Chinese law. While traveling to the US may be a great inconvenience and difficulty at this time, the Court believes it is necessary in this case to address both the legality issues and the identity concerns raised by the Alleged Debtors."

- "Because the willingness of the Petitioners to attend in-person depositions will affect several threshold issues, including the ability of the Petitioning Creditors to carry their evidentiary burdens and the identity concerns raised by the Alleged Debtors, **the Court will require that there is an agreement signed by counsel for the Petitioning Creditors that the Petitioning Creditors will appear for live depositions in the United States before any other discovery or motion practice will continue**."(emphasis added)

6. On September 4, 2020, the Court collectively addressed the foregoing points in each of the "Discovery Orders" [Dkt. Numbers 165, 167, 168, and 169] issued on September 4, 2020, requiring that:

(i) No discovery or motions practice would be permitted to continue unless and until a live deposition agreement was signed by counsel for Petitioners and filed with the Court ...;
(ii) Petitioners would be required to sign their answers to their interrogatories with their own "wet signatures" as opposed to the signature of Petitioners' counsel; and
(iii) Petitioners would be required to provide Alleged Debtors with copies of passports of all of the Petitioners, upon request and that such passports would be submitted to the Court for in-camera inspection, upon request.
(iv) Petitioners depositions would be required to be taken in person in the United States at a time and place agreeable to the Parties;
(v) Petitioners would be required to produce all documents concerning transfers of funds from Chinese accounts to the Alleged Debtors that underlie the Petitioners' claims; and
(vi) Petitioners would be required to produce all documents concerning communications between Petitioners and Michael Fu.

7. Petitioners filed a *Motion for Reconsideration of the Discovery Orders* [Dkt No. 175] on September 15, 2020, asserting *inter alia* a non-existent "travel ban" against Chinese citizens purportedly "not fully considered or understood prior to the Court's ruling on the aforementioned issues." In that same pleading, counsel for Petitioners attempted to argue that this Court should authorize either live or video depositions of the Petitioners which it incorrectly

declared could proceed in the Chinese territory of Macau, a practice that is illegal under Chinese law since it violates sovereignty of the Chinese legal system.

8. This Court issued its *Order Denying the Motion for Reconsideration of the Discovery Orders* [Dkt. No. 202] on October 22, 2020. It did so for several reasons. First, the Court found that restrictions on travel by the Petitioners, who are Chinese nationals, to the United States renders such travel merely inconvenient, but not impossible. The Court noted that the presidential proclamation on which the Petitioners relied specifically provides several exceptions to limitations on entry into the United States. Second, the Court found that the Petitioners' unwavering and ill-advised recommendation to conduct depositions in Macau failed to address legality and identity concerns raised by the Alleged Debtors and that the Petitioners presented no newly discovered evidence or intervening change in controlling law that would prevent such conclusion. Finally, the Petitioners' argument that the Discovery Orders had to be altered because of purported new evidence of an alleged fraudulent transfer thus warranting discovery concerning the Alleged Debtors' use of loan proceeds was denied *without prejudice* to its being raised in a subsequent motion to compel (1) once the Petitioners' counsel signed and filed the aforementioned "Live Deposition Agreement", and (2) if the Alleged Debtors refuse to respond to the discovery requested by the Petitioners.

9. On October 12, 2020, Alleged Debtors filed their *Third Motion to Dismiss Involuntary Petition*. In that pleading, the Alleged Debtors restated the six (6) aforementioned points stated in the Discovery Orders and argued that the Petitioners had failed to comply with any part of the four (4) *Discovery Orders*, had injected purposeful delay into these proceedings, and were unable to further prosecute these cases.

10. On November 3, 2020, the Petitioners then filed a flurry of *Notices of Appeal*, *Motions for Leave to Take Direct Appeal*, and *Motions to (A) File an Interlocutory Appeal & (B) Requesting Certification to the US Court of Appeals for the Fifth Circuit* concerning each of the four (4) Discovery Orders [Dkt Numbers 218, 220, 221, 223, 225, 226, .228, 230, 231, 233, 235, and 236] and the *Order Denying the Motion for Reconsideration of the Discovery Orders* [Dkt. Numbers 238, 240, and 241].

11. On November 23, 2020 this Court entered its *Order Directing Compliance with Prior Orders* in which it established a deadline of December 4, 2020 for Petitioners' counsel to file the Live Deposition Agreement, or obtain a stay of the *Discovery Orders* pending appeal. Petitioners were clearly warned that failure to do so by the established deadline would result in dismissal of these bankruptcy cases without prejudice.

12. On November 30, 2020, the United States District Court for the Northern District of Texas dismissed the Petitioners' appeals.

13. On December 1, 2020, this Court certified the *Discovery Orders* and the *Order Denying Reconsideration* for direct appeal by the United States Court of Appeals for the Fifth Circuit citing the hope for doing so was to "materially advance the progress of the case[.]" See Dkt. No. 300.

14. On the December 4, 2020 deadline, nearly four months after the Court issued its requirement for a signed and filed "Live Deposition Agreement," the Petitioners' counsel filed what it termed to be a "Live Deposition Agreement." [Dkt. No. 308]. This Court noted several problems with that "Agreement" in that it was filed only on behalf of eleven (11) of sixty-five (65) Petitioners, and that it impermissibly contained several unrequested conditions that would have allowed them to avoid their obligation to appear. Although timely filed, this Court found that such

"Agreement" did not comport with the November 23, 2020 Compliance Order. Coupled with the fact that the Petitioners had not received a stay of the *Discovery Orders*, the Court found that the Petitioners had willfully disobeyed both the *Discovery Orders* and the *Compliance Order*, thereby prejudicing the Alleged Debtors. As a result, the Court issued its *Order Dismissing Involuntary Bankruptcy Cases Without Prejudice* to refiling [Dkt. No. 310] on December 7, 2020.

15. On December 17, 2020, the Alleged Debtors filed their *Motion for Recovery of Attorney's Fees, Costs, and Compensatory and Punitive Damages* [Dkt. No. 313] (the "Recovery Motion") based on bad faith actions by the Petitioners that included (1) the improper filing these parallel bankruptcy cases based on identical claims to those asserted in non-bankruptcy Case No. DC-19-18361 filed in the District Court of Dallas County for the 44th Judicial District ("State Court"); (2) the refusal to properly comply with the Court's order to file a signed Live Deposition Agreement which was aimed at the determination of standing based on the threshold issues of verification of existence and validation of identity of persons claiming to be Petitioners; (3) the filing of multiple motions asserting false claims of non-existent "travel bans" and proposing alternate discovery procedures known to the Petitioners (and clearly determined by this Court) to be illegal under Chinese law and unsupportable under U.S. law. The Recovery Motion was also based on (i) the damage inflicted on the Alleged Debtors' relationships with their lenders; (ii) the restriction of capital needed to operate their enterprise that has led to the inability to refinance other of their debts resulting in potential defaults with other creditors; (iii) the morass of claims that other creditors were forced to file against the Alleged Debtors if only to preserve those claims in these redundant and pointless proceedings. All such fees, costs, and damages in the amount requested are permissible pursuant to 11 U.S.C. § 303(i)(1) and (2) and were requested in an effort to recoup legal fees resulting from the Petitioners' bad faith actions in the form of the filing of

these proceedings and the need to respond to a quagmire of unnecessary pleadings, to offset the Petitioners' damaging but intended results of credit constriction, and to dissuade similar future bad acts.

16. On January 8, 2021, and with its appeals of the *Discovery Orders* and its *Order Denying Reconsideration* still before the Fifth Circuit, Petitioners filed the instant *Motion for (i) Reconsideration of Order Dismissing Involuntary Bankruptcy Cases Without Prejudice; and (ii) Related Relief* [Dkt. No. 25].

17. Petitioners' counsel continues to assert that a "travel ban" imposed by the Trump Administration prohibits the Petitioners' travel to the United States. No such "travel ban" exists. The *travel restrictions* enumerated in the Presidential Proclamation dated January 31, 2020 specifically enumerate exceptions to the restrictions and discuss the manner in which travel may be permitted. The restrictions in that Presidential Proclamation made no distinction between direct travel or indirect travel to the United States. No Petitioner ever attempted to seek entry into the United States by either direct or indirect means or using any exception enumerated in the Presidential Proclamation.

18. Upon information and belief, the Petitioners' counsel did not have a reasonable belief that the Live Deposition Agreement as filed was "sufficient and in compliance with the Court's Order" since such Order never mentioned any permission to so severely condition that Agreement as to allow the Petitioners to avoid their obligation to appear in the United States for deposition. During the four (4) months the Petitioners' counsel was aware of the Court's straightforward requirement for a signed and filed Live Deposition Agreement, it never requested, let alone mentioned, any such conditions prior to the eleventh-hour filing of its "Agreement." The intent of the Petitioners was clear, namely that they would only agree to *possibly* appear. Despite

mention in the instant Motion of the subsequent distribution in the United States of the Pfizer and Moderna vaccines for COVID-19 which clearly constitute a single changed circumstance that might relate to these proceedings, and provide grounds for this Court to reconsider its past Orders, the Petitioners have presented no evidence that distribution and availability of the American vaccine supply to citizens of the United States would in any way translate to similar distribution and availability of that supply in the People's Republic of China, thereby facilitating travel of that country's citizens to this country to participate in live, face-to-face depositions.

19. Petitioners have offered no new argument, no new evidence, no mention of substantial change in underlying law, or other reason that this Court may use to reconsider the Order that is the subject of the instant Motion.

## II. STANDARD FOR RECONSIDERATION

### A. *When one party has already prevailed on a matter by order of the Court, the Court must apply a standard for Reconsideration that is very difficult for the moving party to meet.*

20. Fed. R. Civ. P. 59(e) is applied to bankruptcy cases by Fed. R. Bankr. P. 9023 and permits a court to alter or amend a judgment after entry. See Fed. R. Civ. P. 59(e). Motions for such under this Rule must be timely and request a **substantive alteration** of the judgment. *Dave Kohel Agency, Inc. v. Redshaw, Inc.*, 149 F.R.D. 171, 177 (E.D. Wis. 1993).

21. As relates to a motion for reconsideration, Fed. R. Civ. P. 60(b)(5) (which is applied to bankruptcy cases by Fed. R. Bankr. P. 9024) establishes that "a court may relieve a party or its legal representative from final judgment, order, or proceeding, …[if] the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable[.]" The Supreme Court has explained that the standard for modification on equitable grounds pursuant to Rule 60(b)(5) is not a lenient

one. *Halliburton Energy Servs. v. NL Indus*., 618 F. Supp. 2d 614, 651 (S.D. Tex. 2009). In essence, the party invoking such rule must be "suffering hardship so extreme and unexpected as to justify [the Court] in saying that they are the victims of oppression." *Id*. at 652 (citing United States v. Swift, 286 U.S. 106, 119, 52 S. Ct. 460, 76 L. Ed. 999 (1932)). "Nothing less than a clear showing of grievous wrong evoked by new and unforeseen conditions should lead us to change what was decreed after years of litigation with the consent of all concerned." *Id*. Further, "[Rule 60(b)(5)] does not allow relitigation of issues that have been resolved by the judgment." *United States v. Davison*, 509 F. App'x 330, 332 (5th Cir. 2013) (citing 11 WRIGHT, MILLER, & KANE, FEDERAL PRACTICE AND PROCEDURE § 2860, at 459 (3d ed. 2012)).

22. As relates to a motion for reconsideration, the "catchall provision" under Fed. R. Civ. P. 60(b)(6) (which is applied to bankruptcy cases by Fed R. Bankr. P. 9024) establishes that "a court may relieve a party or its legal representative from a[n] … order… for…any other reason that justifies relief." Notably, such provision **"is to be used by the courts *sparingly* as an equitable remedy to prevent manifest injustice, and should be utilized *only* where extraordinary circumstances prevented a party from taking timely action to prevent or correct an erroneous judgment."** *Weisband v. First Horizon Home Loans (In re Weisband)*, Nos. AZ-10-1239-PaJuMk, AZ-10-1267-PaJuMk, 2011 Bankr. LEXIS 4321 at *22 (B.A.P. 9th Cir. 2011). "As such, under Rule 60(b)(6), a party seeking relief from a judgment must demonstrate both injury and circumstances beyond his control that prevented him from proceeding with the prosecution or defense of the action in a proper fashion." *Id*.

23. A motion for reconsideration is not simply an opportunity for the Court to change its mind, and as such, the standard that must be met by the moving party for the Court to entertain such motion is a very difficult one to meet. *Ramos v. Lucio*, No. B-08-122, 2009 U.S. Dist. LEXIS

146718 at *8 (S.D. Tex. 2009). In truth, it is one that is "much more difficult than that normally borne by a [movant in an underlying original motion] … Motions for Reconsideration are **generally disfavored** …." *Id*. at *8-9 (emphasis added). Further, they are considered to be improper mechanisms for the purpose of introducing evidence that was available at the time of an original motion but which was not presented, for relitigating old issues, for advancing new theories, or for securing a rehearing on the merits. *Fontenot v. Mesa Petroleum Co.*, 791 F.2d 1207, 1219 (5th Cir. 1986). Once a Court has entered a ruling, that ruling should only be disturbed upon demonstration by the Movant that (1) the motion is necessary to correct a manifest error of fact or law; (2) the movant presents newly discovered or previously unavailable evidence; (3) the motion is necessary in order to prevent manifest injustice; or (4) the motion is justified by an intervening change in the controlling law. *Fields v. Pool Offshore*, 1998 U.S. Dist. LEXIS 1122 at *7 (E.D. La. Feb. 3, 1998), aff'd 182 F.3d 353 (5th Cir. 1999). See also *Neaville v. Wells Fargo Bank, N.A.*, No. 3:11-CV-97-P, 2013 U.S. Dist. LEXIS 194315 at *3 (N.D. Tex. Mar. 7, 2013) ("[W]here litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again.")

## III. ARGUMENT

### A. The Petitioners have failed to satisfy any requirements under Fed. R. Bankr. P. 9023 and 9024 permitting reconsideration of the Motion.

24. As previously mentioned, Fed. R. Civ. P. 59 permits substantive alteration of a court's judgment after its entry in a case. *Dave Kohel Agency, Inc. v. Redshaw, Inc.*, 149 F.R.D. at 177. However, such a motion leading to alteration or amendment of a judgment must be timely filed no later than twenty-eight (28) days after entry of the judgment. See Fed. R. Civ. P 59(e). Here, Petitioners seek this Court to vacate its *Order Dismissing Involuntary Bankruptcy Cases*

*Without Prejudice* [Dkt No. 310], which would undoubtedly constitute such a substantive alteration of its judgment. However, that Order was entered by this Court on December 7, 2020. Petitioners filed their *Motion for Reconsideration* on January 7, 2021, and the instant *Amended Motion for Reconsideration* on January 8, 2021, thirty-one (31) and thirty-two (32) days, respectively, after entry of this Court's Order of dismissal. As such, and as applied to bankruptcy cases by Fed. R. Bankr. P. 9023, both of these two pleadings missed the filing deadline articulated in Rule 59(e) and are thus untimely.

25. As for Fed. R. Civ. P. 60(b), which is applied to bankruptcy proceedings via Fed. R. Bankr. P. 9024, there are six (6) grounds on which a court may grant relief from a final judgment, order or proceeding. Here, Petitioners have invoked the last two, namely Rule 60(b)(5) which envisions a situation where "applying it prospectively is no longer equitable;" and Rule 60(b)(6) where there exists "any other reason that justifies relief." See Fed. R. Civ. P. 60(b)(5) and (6). Application of either of these rules would be inappropriate here for several reasons.

i. **Relief requested pursuant to Rule 60(b)(5) is not warranted because the Order of Dismissal has balanced the equities of both the Alleged Debtors and the Petitioners and since the Petitioners continue to seek conditional compliance with the Court's Orders.**

26. First, the Petitioners appear once again to condition their participation in live, in-person depositions predicated upon the availability and distribution of the COVID-19 vaccine in the United States. However, whether a vaccine is available and is being distributed pursuant to an inoculation program in this country is not relevant as to whether the same will be true of Chinese citizens living in the People's Republic of China. It is important to note that, regardless of vaccine availability, either in the United States or abroad, the restrictions on travel (and the exceptions

thereto) remain in place, and will likely continue to do so until repealed at some unknown date in the future by the new presidential administration.

27. Second, the Petitioners also imply that they will participate in live depositions in the United States *if* they can receive the necessary visas, but they hint that the visa processing departments of the U.S. Embassy in Beijing and the General Consulates in other major cities in China are "still closed" and may continue to be closed at the time they purportedly agree to appear for depositions However, a review of the U.S. Embassy official website indicates that the Embassy (in Beijing) and all the U.S. Consulates (located in Chengdu, Guangzhou, Shanghai, and Shenyang) are conducting visa interviews at this time. See https://china.usembassy-china.org.cn/visas/nonimmigrant-visas/. In essence, procedures for requesting visas have been, are, and will likely continue to be in place. The Petitioners simply needed to avail themselves of those procedures to be able to participate in live, in-person depositions in the United States. The fact is that they didn't even attempt to do so in the eight (8) months between the April 8, 2020 involuntary petition commencing this case and the December 4, 2020 deadline for their counsel to file its Live Deposition Agreement.

28. Third, the Petitioners' assertion that the Alleged Debtors are "mere shell companies that would not suffer any serious consequences by continuing with these cases" is clearly false. The fact is that these bankruptcy proceedings have negatively impacted the relationship between the Alleged Debtors and their creditors, resulting in a severe constriction of credit and access to capital markets since other lenders have balked at, or have outright denied, refinancing of debt obligations. Without the opportunity to obtain financing or refinancing, Alleged Debtors' operations are placed in grave jeopardy, and the risk to creditor equities in this case are similarly

endangered by increasing the likelihood of future defaults on Alleged Debtors' existing debt obligations. This Court has seen these problems first hand in the Wall010, LLC case.

29. Fourth, the assertion that the Alleged Debtors' *Motion for Recovery of Attorneys' Fees, Costs, and Compensatory and Punitive Damages Pursuant to 11 U.S.C. § 303(i)* [Dkt. No. 313] is "unjust" is not relevant to discussion of the grounds by which the *Order of Dismissal* may be reconsidered. It is true that the amount sought is large, but so too are the fees, costs, and expenses paid by the Alleged Debtor and borne of the aforementioned bad faith and unnecessary actions of the Petitioners. Further, reconsideration of the Court's *Order of Dismissal* predicated solely on the significant negative impact of a potential award of fees, costs, and damages to a non-compliant Petitioner would give ammunition to any party that would challenge any future court decisions based on the same bald reasoning. Finally, any argument concerning "possible judgment" regarding the award of any costs, fees, and damages, and the resultant impact to re-filing a cause of action is not a topic that is ripe for consideration by this Court; and it will not be so until a judgment is actually rendered.

30. Fifth, the Petitioners would have the Court believe that the effect of its *Order of Dismissal* would still render them unable to refile their bankruptcy cases. This is patently untrue. The *Order of Dismissal* was issued *without prejudice* and so clearly permits the Petitioning Creditors to refile their cases at such time as they are able (if not willing) to travel to the United States for live depositions.

31. Given the fact that the Court's Order of Dismissal has taken into account the non-compliance of the Petitioners while still giving them the opportunity to refile their case or cases once they are able or willing to comply with the Court's requirements for them to prosecute this case, and the fact that such orders may help to alleviate the ongoing and detrimental effects on the

Alleged Debtors of the lack of access to credit caused by these proceedings, it is clear that equities of the parties have been fairly balanced. As such no grounds exist pursuant to Rule 60(b)(5) that would permit this Court to reconsider its *Order of Dismissal*.

**ii. Relief requested pursuant to the "catch all" provision of Rule 60(b)(6) is not warranted because no new or previously unavailable evidence has been submitted, and since Petitioners' counsel continues to condition the Petitioners' participation in live depositions in the United States.**

32. As mentioned *supra*, Rule 60(b)(6) requires that "a party seeking relief from a judgment must demonstrate both injury and circumstances beyond his control that prevented him from proceeding with the prosecution or defense of the action in a proper fashion." *In re Weisband*, 2011 Bankr. LEXIS 4321 at *22. Here, however, circumstances impacting the Court's decision to order dismissal of the bankruptcy cases was completely within the control of Petitioners' counsel. All it had to do was sign and file a "Live Deposition Agreement" that comported with the expectations of the Court. It had nearly four months between August 19, 2020 and December 4, 2020 to do so, and yet, it did not comply. Now, only after the Court's *Order of Dismissal* (which has not negatively affected the Petitioners interests in this case) has Petitioners' counsel now indicated that it will conduct itself pursuant to the demands of this Court.

33. As previously stated, to secure reconsideration of a ruling entered by a court, the Movant must demonstrate that "(1) the motion is necessary to correct a manifest error of fact or law; (2) the movant presents newly discovered or previously unavailable evidence; (3) the motion is necessary in order to prevent manifest injustice; or (4) the motion is justified by an intervening change in the controlling law." *Fields*, 1998 U.S. Dist. LEXIS 1122 at *7. Here, the Petitioners' counsel seems to infer that new, previously unavailable evidence exists that would permit it to amend its Live Deposition Agreement which should be considered by this Court to aid it in

vacating its *Order of Dismissal*. That evidence is of the newly available Pfizer and Moderna COVID-19 vaccines being distributed in the United States which would seemingly enable live depositions in the United States by mid-summer 2021. However, Petitioners' counsel has failed to articulate how the American vaccines developed and dispensed as part of an inoculation campaign targeting citizens and resident aliens of the United States will ensure that the Petitioners (who are citizens residing in mainland China) will receive such vaccinations enabling them to appear for depositions in this country. There is no evidence that the U.S. stockpile of vaccines is being provided to the People's Republic of China. There is no evidence provided of any similar inoculation program in China using any internally-developed vaccine. As such, this information purportedly submitted as if it were some form of "newly available evidence" is irrelevant to these proceedings.

34. The Petitioners' counsel also states, as mentioned before, that it will agree to live depositions *if* the Petitioners are able to secure visas at any of the U.S. Embassy or U.S. Consulate sites in China which Petitioners' counsel asserts are "still closed." Facts stated in paragraph 27 *supra* clearly disputes this false allegation.

35. Neither of these inferences constitutes new evidence that may be considered by this Court and are irrelevant to the point at hand. The Court had already articulated its expectations to the Petitioners and their counsel concerning the Live Deposition Agreement, and gave them a long deadline in which to comply with said expectations. They failed to do so, and now, only after a ruling by this Court are the Petitioners and their counsel willing to cooperate, but again with impermissible conditions that would permit them to avoid their deposition obligations.

36. Given the fact that the Petitioners provide no new evidence for consideration by this Court, and since the proposal of the Petitioners' counsel implies continuing conditions on the

Petitioners' participation in live depositions in the United States, it is clear that no grounds exist pursuant to Fed. R. Civ. P. 60(b)(6) that would permit this Court to vacate its Order of Dismissal.

## IV. CONCLUSION

37. For reasons articulated heretofore, this Court should find no grounds under Fed. R. Civ. P. 59(e), 60(b)(5), or 60(b)(6) on which to reconsider and/or overturn its *Order Dismissing Involuntary Bankruptcy Cases Without Prejudice* [Dkt No. 310]. As such, the Court should deny the relief requested in the Petitioners' Motion.

## V. PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Alleged Debtors WALL007, LLC *et al*. request that this Court enter an order denying the relief requested in the Petitioners' *Motion for Reconsideration* [Dkt. No. 325] in its entirety, and for such other and further relief to which it may be justly entitled.

Dated: January 26, 2021.

Respectfully submitted,

*/s/ Joyce W. Lindauer*

Joyce W. Lindauer
State Bar No. 21555700
Kerry S. Alleyne
State Bar No. 24066090
Guy H. Holman
State Bar No. 24095171
Joyce W. Lindauer Attorney, PLLC
1412 Main St., Suite 500
Dallas, Texas 75202
Telephone: (972) 503-4033
Facsimile: (972) 503-4034
Email: joyce@joycelindauer.com
guy@joycelindauer.com
kerry@joycelindauer.com
Attorneys for Alleged Debtors

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on January 26, 2021, a true and correct copy of the foregoing document was served via email pursuant to the Court's ECF system upon all parties receiving notice in this case.

*/s/ Joyce W. Lindauer*
Joyce W. Lindauer